# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA

Case No. _____

**KEVIN JONES**,
individually,

*Plaintiff*,

v.

**BITPAY, INC.**,
a Delaware for-profit corporation,

*Defendant*.

---

**COMPLAINT FOR MONEY DAMAGES, EQUITABLE RELIEF, AND A DEMAND FOR TRIAL BY JURY**

---

Filed by:

FISCHER REDAVID PLLC
3975 Roswell Road NE
Suite 3
Atlanta, GA 30342
Phone: (404) 287-2856
Fax: (954) 860-8434
Service@YourChampions.com

/s/ Jordan Redavid Esq. 
**JORDAN REDAVID, ESQ.**
Georgia Bar No. 628049
*Counsel for Kevin Jones*

*Jones v. Bitpay, Inc.*
Complaint

## Overview

Broadly speaking, Kevin Jones, a North Carolinian, is suing Bitpay, Inc., a Georgia for-profit corporation, to reclaim cryptocurrencies that belong to him, recover consequential and punitive damages, and prove that he has been defrauded.

## General Allegations

### The Parties

1. Kevin Jones is an adult citizen of and domiciled in North Carolina.

2. Bitpay, Inc. is a for-profit corporation incorporated in Delaware and with its headquarters and principal place of business located at 8000 Avalon Boulevard, Suite 300, Alpharetta, Georgia 30009.

3. Bitpay, Inc., founded in 2011, purportedly "pioneers building blockchain payment technology to transform how businesses and people send, receive, and store money around the world," including cryptocurrencies like Bitcoin.[1]

4. Bitpay, Inc. customers can buy, store, swap, and spend cryptocurrency using fiat or other cryptocurrencies through its website, app, and/or card.

### Subject Matter Jurisdiction

5. There is complete diversity of the parties and the amount in controversy exceeds $75,000; thus, this Court has diversity jurisdiction. 28 U.S.C. § 1332.

---

[1] https://bitpay.com/about (last visited 4/19/23).

*Pesonal Jurisdiction*

6. Bitpay, Inc. has sufficient minimum contacts with Georgia because it engages in substantial activity here. Its headquarters and several top executives are in Georgia, and it operates its national and/or international operations from Georgia.

7. Bitpay, Inc. has purposes availed itself of the privilege of conducting activities in Georgia, as evidenced by, among other things, registering to do business with Georgia's Secretary of State's Corporations Division.

8. Mr. Jones' causes of action arise from the aforementioned activities.

*Venue*

9. Venue is proper in this district because Bitpay, Inc. resides here, a substantial part of the events giving rise to the claim occurred here, and/or Bitpay, Inc. is subject to this Court's specific personal jurisdiction.

*Cryptocurrency*

10. Cryptocurrencies are digital assets that can be a medium of exchange or store of value for which generation or ownership records are supported through a distributed ledger technology that relies on cryptography, such as blockchain.

11. Cryptocurrency is commonly referred to as crypto.

12. Cryptos are digital assets that are intangible.

13. Cryptos generally, but as a medium of exchange specifically, have the utility of fulfilling economic need.

*Bitcoin*

14. Bitcoin is a decentralized crypto that uses a blockchain-based ledger to track the ownership and transfer of every bitcoin in existence.

15. It's commonly abbreviated as BTC.

16. 1 BTC = 100,000,000 Satoshi (or Sats), an attribution to Bitcoin's pseudonymous creator, Satoshi Nakamoto.

17. In order to complete a BTC transaction, one must have a bitcoin wallet.

18. A BTC wallet is a computer file made to store bitcoin information.

19. A BTC transaction between wallets typically requires use of a public key, which acts like the BTC address of the sender and recipient, and a private key, which, for security reasons, is needed to send BTC out of a wallet.

20. One acquires BTC from another wallet or by mining BTC.

21. BTC mining is a process through which someone with internet access and equipment can update BTC's ledger by employing computer power to solve a complex computer problem. The first "miner" who solves the problem gets the right to update the ledger by adding a block of recent transactions to the blockchain. The protocol pays the successful miner a reward in newly minted BTC the number of which is determined by a pre-existing algorithm. The fees paid to a successful minor are periodically reduced by 50%. This event is commonly referred to as a "halving."

### *Ethereum*

22. Ether is a crypto on the Ethereum blockchain.

23. Ethereum is a technology for building apps and organizations, holding assets, transacting and communicating without being controlled by a central authority.

24. Ether, which is commonly abbreviated as ETH, is used to pay for certain activities on the Ethereum network.

25. Ethereum also has a mining process that pays miners rewards in ETH.

26. Ethereum also uses a wallet-based system for storing, accessing, and sending ETH.

### *Mr. Jones Dealings with Bitpay, Inc.*

27. Mr. Jones opened an account with Bitpay in or around October 2018 ("Primary Account").

28. Mr. Jones used his own name and personal email address liveclean360@gmail.com to open his Primary Account.

29. In 2018, Mr. Jones started to get involved in crypto mining efforts.

30. Mr. Jones directed his mining rewards to his Primary Account.

31. In 2019, Mr. Jones lost access to his liveclean360@gmail.com personal email address that was tied to his Primary Account.

32. On or around May 10, 2019, Mr. Jones was no longer able to access his Primary Account. At that time, his Primary Account included but was not limited to:

    a. 2,790 Bitcoin (BTC)

    b. 3,100 Ethereum (ETH)

33. Thereafter, Mr. Jones attempted to contact Bitpay, Inc. to regain access.

34. Mr. Jones attempts to contact Bitpay, Inc. through Facebook (both Messenger and by commenting on Bitpay, Inc.'s Facebook page) did not yield any favorable results.

35. Mr. Jones' efforts to resolve this via telephone calls were also unsuccessful.

36. Mr. Jones attempted to correspond with Bitpay, Inc. through their customer support methods, including emails associated with support@bitpay.com.

37. On May 10, 2019, at or around 9:37 p.m. EST, Bitpay, Inc. sent Mr. Jones an email that began, "*Thank you for reaching out to the BitPay support team!*"

38. That same day, "Sydney," an agent or employee of Bitpay, Inc.'s "Bitpay Support Team," told Mr. Jones that he had an account with a balance of 2,790 BTC.

39. The closing price of BTC that day was ~$6,384.25/BTC, which meant that Mr. Jones' BTC was worth approximately $17,812,057.50.

40. On May 13, 2019, at or around 4:07 p.m. EST, Bitpay, Inc. sent Mr. Jones another email that began, "*Your request has been updated.*"

41. On May 15, 2019, at or around 4:10 p.m. EST, "Sydney," on behalf of Bitpay, Inc., sent Mr. Jones another email that read, in pertinent part:

*Hello,*

*We are aware of the issue you experienced in regard to your accessing your account. We are investigating this issue and contact you back [sic].*

*We apologize for any inconvenience. …*

42. On May 20, 2019, at approximately 1:07 p.m. EST, "Morgan," another Bitpay Support Team agent or employee, sent Mr. Jones another email that read, in pertinent part:

*Hello,*

*I am escalating your BitPay support request for further review.*

*Please allow some more time for our review and a member of the team will follow up with you.*

*Thank you for your patience!*

43. On May 26, 2019, at approximately 6:05 p.m. EST, "Alex," another Bitpay Support Team agent or employee, sent Mr. Jones an email that read, in pertinent part:

*Hello,*

*The issue that you reported was caused by a known temporary outage. All serves have been restored.*

*We apologize for any inconvenience. Please let us know if you experience any further trouble.*

44. On June 2, 2019, Mr. Jones spoke with Ben Galliotti, an agent or employee of Bitpay, Inc., on a phone call.

45. Mr. Galliotti, on behalf of Bitpay, Inc., confirmed that he could see Mr. Jones' Primary Account.

46. Mr. Galliotti, on behalf of Bitpay, Inc., confirmed the BTC was in the Primary Account.

47. Mr. Galliotti, on behalf of Bitpay, Inc., verified that Mr. Jones' personal Gmail account liveclean360@gmail.com was tied to that Primary Account but was no longer. He told Mr. Jones that he would have a support team investigate the matter and follow up.

48. Neither Mr. Galliotti nor anyone else for Bitpay, Inc., followed up.

49. On June 7, 2019, Mr. Jones spoke to "Karl," an agent or employee of Bitpay, Inc., and apprised him of the history of his issues and most recent communication with Mr. Galliotti, who never did follow up.

50. "Karl" told Mr. Jones that this was no the first time a situation like his occurred and off-handedly remarked, "blockchain ain't so smart after all, so much for a smart contract."

51. That same day, around 6:26 p.m. EST, Mr. Jones received another generic email from the BitPay Support team that was nearly verbatim to the May 10, 2019 email that began: "*Thank you for reaching out to the BitPay support team!*"

52. On June 15, 2019, at or around 2:05 p.m. EST, Mr. Jones got another email from "Alex." This one read:

*Hello,*

*I am escalating your BitPay support request for further review.*

*Please allow some more time for our review and a member of the team will follow up with you.*

*Thank you for your patience!*

53. On November 11, 2019, Mr. Jones spoke to an agent or employee of Bitpay, Inc. who, again, confirmed that Mr. Jones' Primary Account had 2,790 BTC.

54. Mr. Jones subsequently opened another account for which Bitpay, Inc. using a different personal email ([KtotheJ\*\*\*@\*.com](KtotheJ***@*.com)) issued him a debit VISA card ending *610 with an expiration date in 2021.

55. In early 2023, Bitpay, Inc. denied that Mr. Jones ever had any account.

## Count I: Conversion

56. Mr. Jones re-alleges paragraphs 1 – 55 as if pled herein.

57. BTC's blockchain ledger tracks the ownership and transfer of every bitcoin in existence.

58. Every BTC wallet and the number of bitcoin inside that wallet can be identified on the blockchain by referring to its public key.

59. Bitcoins are sufficiently identifiable to be considered specific intangible property.

60. ETH's Ethereum blockchain tracks the ownership and transfer of every Ether in existence.

61. Every ETH wallet and the number of ETH inside that wallet can be identified on the Ethereum blockchain by referring to its public key.

62. ETH are sufficiently identifiable to be considered specific intangible property.

63. At all times material, Mr. Jones had title to and/or the right to possess the BTC and ETH in his Primary Account.

64. At all times material, Mr. Jones' BTC and ETH were in the actual possession of Bitpay, Inc.

65. Mr. Jones demanded the return of his BTC and ETH.

66. Bitpay, Inc. has refused to return Mr. Jones' BTC and ETH.

67. Bitpay, Inc.'s conversion was done willfully or in conscious disregard of the consequences.

68. Bitpay, Inc. acted in bad faith.

69. Bitpay, Inc.'s unauthorized assumption and exercise of the right of ownership over that BTC and ETH is in hostility to Mr. Jones' rights to same.

70. As a direct, proximate, and foreseeable result of Bitpay, Inc.'s conversion, Mr. Jones did not have the ability to access, transfer, and/or sell all or some of his BTC and/or ETH.

71. During this time the prices of BTC and ETH fluctuated greatly.

72. After Bitpay, Inc.'s wrongful conversion of Mr. Jones' BTC, the price of BTC reached a high of approximately $68,789.63/BTC.

73. After Bitpay, Inc.'s wrongful conversion of Mr. Jones' ETH, the price of ETH reached a high of $4,811.70/ETH.

74. As a direct, proximate, and foreseeable result of Bitpay, Inc.'s conversion, Mr. Jones lost the opportunity to sell or convert all or some of his BTC and/or ETH to U.S. Dollars (USD) or a stablecoin such as Tether (USDT) for profitable returns.[2]

WHEREFORE, Kevin Jones, hereby demands a trial by jury and judgment against Bitpay, Inc. for conversion for:

(a) return of 2,790 BTC and 3,100 ETH, or their market value in USD or USDT;

---

[2] Tether, or USDT, is a crypto stablecoin pegged to the U.S. Dollar, backed 100% by Tether's reserves, according to Tether's website, intended to have a 1:1 relationship where 1 USDT = 1 USD.

(b) consequential damages for the diminution in value of the 2,790 BTC and 3,100 ETH during Mr. Jones' lost opportunity to sell them for market value during the period of conversion, from BTC and ETH's respective all-time high to their current market value.

(c) punitive damages;

(d) attorneys' fees and costs; and/or,

(e) Prejudgment interest.

### Count II: Unjust Enrichment

74. Mr. Jones re-alleges paragraphs 1 – 55 as if pled herein.

75. Mr. Jones and Bitpay, Inc. did not have a contract.

76. Any purported user agreement or terms of service that Bitpay, Inc. posts, publishes, or requests to be read or acknowledged by its users, including Mr. Jones, is not a legal contract that extinguishes one's right to otherwise pursue a valid claim of unjust enrichment.

77. Bitpay, Inc. was conferred a benefit by Mr. Jones (to wit: having custody and/or control and/or access to his BTC, ETH, and other crypto holdings).

78. Bitpay, Inc. has denied Mr. Jones access to his crypto holdings and, based on information and belief, kept, misappropriated, dispensed, and/or used for liquidity for its own interests and benefit.

79. Bitpay, Inc. knew the value being bestowed upon it.

80. By doing so, Bitpay, Inc. has been unjustly enriched and ought to return the crypto holdings to Mr. Jones or compensate him.

75. During this time the prices of BTC and ETH fluctuated greatly.

76. During Bitpay, Inc.'s unjust enrichment through Mr. Jones' BTC, the price of BTC reached a high of approximately $68,789.63/BTC.

77. During Bitpay, Inc.'s unjust enrichment of Mr. Jones' ETH, the price of ETH reached a high of $4,811.70/ETH.

78. As a direct, proximate, and foreseeable result of Bitpay, Inc.'s unjust enrichment, Mr. Jones lost the opportunity to sell or convert all or some of his BTC and/or ETH to U.S. Dollars (USD) or a stablecoin such as Tether (USDT) for profitable returns.

WHEREFORE, Kevin Jones, hereby demands a trial by jury and judgment against Bitpay, Inc. for unjust enrichment for:

(a) return of 2,790 BTC and 3,100 ETH, or their market value in USD or USDT;

(b) consequential damages for the diminution in value of the 2,790 BTC and 3,100 ETH during Mr. Jones' lost opportunity to sell them for market value during the period of conversion, from BTC and ETH's respective all-time high to their current market value.

(c) punitive damages;

(d) attorneys' fees and costs; and/or,

(e) Prejudgment interest.

### Count III: Fraudulent Misrepresentation

81. Mr. Jones re-alleges paragraphs 1 – 55 as if pled herein

82. Bitpay, Inc., by and through its employees and/or agents, made several false representations of material facts about the status of Mr. Jones' Primary Account, and his ability to re-access it.

83. Those false misrepresentations were done knowingly or with reckless disregard for the truth to induce Mr. Jones to act or refrain from acting.

84. Mr. Jones, in justifiable reliance upon those false representations, was unable to regain access to his Primary Account and, as a result, unable to sell or convert his crypto holdings, including but not limited to BTC and ETH, for profit while their market value rose dramatically.

85. The market value of crypto peaked during this time and has since retraced and diminished substantially, much to the detriment of Mr. Jones.

86. As a direct, proximate, and foreseeable result of Bitpay, Inc.'s fraudulent misrepresentations, Mr. Jones lost the opportunity to sell or convert all or some of his BTC and/or ETH to U.S. Dollars (USD) or a stablecoin such as Tether (USDT) for profitable returns.

WHEREFORE, Kevin Jones, hereby demands a trial by jury and judgment against Bitpay, Inc. for fraudulent misrepresentation for:

(a) return of 2,790 BTC and 3,100 ETH, or their market value in USD or USDT;

(b) consequential damages for the diminution in value of the 2,790 BTC and 3,100 ETH during Mr. Jones' lost opportunity to sell them for market value during the period of conversion, from BTC and ETH's respective all-time high to their current market value.

(c) punitive damages;

(d) attorneys' fees and costs; and/or,

(e) Prejudgment interest.

### Count IV: Litigation Expenses Under O.C.G.A. § 13-6-11

87. Mr. Jones re-alleges paragraphs 1 – 55 and 82 – 86 as if pled herein.

88. Mr. Jones gave Bitpay, Inc. a reasonable opportunity to make this right before any litigation commenced.

89. However, instead Bitpay, Inc. continued to act in bad faith and/or was stubbornly litigious and/or caused Mr. Jones unnecessary trouble and expense.

WHEREFORE, Kevin Jones, hereby demands a trial by jury and the award of the expenses (costs and attorneys' fees) associated with litigating this case.

Dated this 6th day of May, 2023.

*Jones v. Bitpay, Inc.*
Complaint

Filed by:

FISCHER REDAVID PLLC
3975 Roswell Road NE
Suite 3
Atlanta, GA 30342
Phone: (404) 287-2856
Fax: (954) 860-8434
Service@YourChampions.com

/s/ Jordan Redavid Esq.
**JORDAN REDAVID, ESQ.**
Georgia Bar No. 628049
*Counsel for Kevin Jones*